### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

**LANDON CAIN OWENS**                          **CIVIL ACTION NO. 22-2139**

                                                **SECTION P**

**VS.**

                                                **JUDGE TERRY A. DOUGHTY**

**WYDETTE WILLIAMS, ET AL.**                   **MAG. JUDGE KAYLA D. MCCLUSKY**

### <u>REPORT AND RECOMMENDATION</u>

Plaintiff Landon Cain Owens, a prisoner at Riverbend Detention Center ("RDC") proceeding pro se and in forma pauperis, filed this proceeding on approximately July 15, 2022, under 42 U.S.C. § 1983.  He names the following defendants: Sheriff Wydette Williams, Secretary James Leblanc, and Head Nurse Lena Middlebrooks.[1]

For reasons that follow, the Court should retain the following: Plaintiff's requests for compensatory and punitive damages against Nurse Middlebrooks with respect to (1) his claim that Middlebrooks waited almost three months (from March 29, 2022-June 28, 2022) to refer him for surgery or otherwise seek approval for his surgery from the Department of Corrections and (2) that he requested emergency care on July 11, 2022, but Nurse Middlebrooks did not include him in the medical "callout" or otherwise provide care.  The Court should dismiss Plaintiff's remaining claims and requests for relief.

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

**Background**

Plaintiff was transferred to RDC on March 18, 2022.  [doc. # 1, p. 3].  He suggests that he had an abdominal hernia before he was transferred.  *Id.*  He states that, during his transfer to RDC, he injured his lower abdomen and experienced severe pain.  *Id.*

When Plaintiff arrived at RDC, he could not walk, he could "barely sit upright," the "pain was blinding[,]" and he was dizzy and nauseous.  *Id.*  He "begged for medical help" every time the door opened, but guards responded with threats of bodily harm.  *Id.* at 5.  Plaintiff writes: "At one point I was sure I was going to die I had lost vision and my arms and legs were tingling, my head was on fire like my blood was poisonous.  I couldn't make it to the door, all I could [do] was scream for help. [sic]."  *Id.*

Plaintiff "was treated in the same manner until March 29, 2022, when [he] saw the doctor for initial screening for intakes."[2]  [doc. #s 1, pp. 5-6; 14, p. 2].  He was "seen by Nurse Middlebrooks and Dr. Castille[,]" who "come once per week."  [doc. # 1, p. 6].  Dr. Carla Castille[3] examined his injuries, diagnosed him with a "large inguinal hernia soft minimal reducible," and told him that she "was going to refer [him] to Ochsner Surgery Clinic."  [doc. #s 1, pp. 5-6; 14, p. 2].  Plaintiff states that Middlebrooks signed Dr. Castille's referral order and wrote, "referred."  [doc. # 41, p. 8].  Plaintiff claims, however, that Middlebrooks "intentionally

---

[2] In his initial pleading, Plaintiff stated that Dr. Castille examined him on March 22, 2022.  [doc. # 1, p. 6].  He appears to clarify in a subsequent filing that Dr. Castille examined him on March 29, 2022.  [doc. # 14, p. 2].

[3] Based on other pending matters in this Court, Plaintiff may actually be referring to Carla Costello, a nurse practitioner.  *See Jason v. Hedgemon*, 21-cv-3405 (W.D. La.).  Further, the undersigned takes judicial notice that there is no Carla Castille listed on the website of the Louisiana Board of Medical Examiners.  *See* https://online.lasbme.org/#/verifylicense (last visited 04/20/2023).  However, out an abundance of caution and noting that the person identified as "Dr. Castille" is not a defendant, the undersigned has used the name provided by Plaintiff in this Report and Recommendation.

and deliberately failed" to make the referral, which resulted in Plaintiff experiencing, inter alia, "prolonged pain and suffering" and the "progression of an extremely severe medical condition that could have at any time become life threatening . . . ." [doc. #s 41, p. 8; 14, p. 2]. Plaintiff alleges that an "Receptionists" record reveals that the "only request that [was] made was on Tuesday June 28, 2022 . . . ." [doc. # 14, p. 2].

Plaintiff submitted numerous requests for medical treatment. [doc. # 1, pp. 6-7]. He states that "on several occasions the pain [was] so severe [he] could barely walk." *Id.* at 6. His "attempts to make medical emergency [were] denied." *Id.* at 6-7. When he "attempted to make emergency[,]" Captain Barnes ignored him or told him that he (Barnes) could not make Nurse Middlebrooks help. *Id.* at 7.

On June 20, 2022, Plaintiff submitted a "Request for Medical Services," requesting help for his "severe hernia," which was "causing very sharp pains in [his] stomach and testicles" and beginning to enter his scrotum. [doc. # 10-3, p. 1]. A nurse triaged the request on June 23, 2022, appearing to write, "referring for evaluation."[4] *Id.*

On June 23, 2022, following "numerous sick call requests since March[,]" Plaintiff saw Nurse Middlebrooks. [doc. # 1, p. 7]. Middlebrooks "barely listened to him." *Id.*

On June 28, 2022, Plaintiff informed Dr. Castille that his condition was worsening and that he was experiencing pain and blood in his urine. *Id.* at 7. Dr. Castille examined him, referred to his previous visit with her, and asked him if he had "seen anyone since March 22, 2022[,]" to which Plaintiff responded, "no." *Id.* Dr. Castille stated that she was "going to put another referral to Ochsner[,]" instructed Plaintiff to come back to see her if he had not "been

---

[4] The nurse's handwriting is difficult to read.

seen in two weeks[,]" and told Plaintiff to "make medical emergency" if his pain increased or if his herniated area became hard. *Id.*

Plaintiff maintains that "once Dr. Carla Castille order[ed] the referral[,]" it was Nurse Middlebrooks' job to process and make the appointment. [doc. # 1, p. 8]. He claims that Middlebrooks should have referred him for surgery on March 29, 2022, but instead she waited until June 28, 2022, to submit an urgent "request to [the Department of Corrections ('D.O.C.')] for surgery." [doc. #s 14, pp. 2-3; 10-4, p. 1]. He claims that Nurse Middlebrooks was "intentionally failing to make the referral" for surgery. [doc. #s 1, p. 8; 14, p. 2]. The delay "further[ed] the progression of an already severe injury." *Id.*

Plaintiff states that since his visit with Dr. Castille on June 28, 2022, he "tried several times to make medical emergency[,]" but he was denied. [doc. # 1, p. 8]. As of July 11, 2022, his hernia, which was protruding into his scrotum and which had hardened, was causing him severe pain in his testicles. *Id.* He claims that Nurse Middlebrooks did not place him on "medical callout" after he deposited "a sick call in the box as instructed by" Dr. Castille. *Id.* On approximately July 12, 2022, he tried to access emergency care, but he was denied. *Id.* He alleges that previously (he suggests approximately one week before July 12, 2022) he asked Lieutenant Wilson for help, and Wilson responded, "I don't mess with Nurse [Middlebrooks] about medical." *Id.* Plaintiff "stopped Capt. Barnes again and asked him for help," and Barnes responded, "I told you I can't make [Nurse Middlebrooks] do anything for you." *Id.*

As above, Plaintiff filed this proceeding on approximately July 15, 2022. [doc. # 1].

On approximately July 17, 2022, a surgeon at E.A. Conway Medical Center evaluated Plaintiff, attempted to push Plaintiff's herniated intestines back into his stomach, explained that Plaintiff needed surgery "to fix the injury" and that the injury could become life threatening,

stated that he was aware of how painful the injury was, and stated that he was going to expedite the surgery due to the severity and size of the hernia.  [doc. # 41].

On July 21, 2022, Nurse Middlebrooks emailed the D.O.C. headquarters a request for "medical/mental health transfer," writing that Plaintiff was "waiting on appointment at LSU." [doc. # 10-5, p. 1].

Plaintiff alleges that it is Sheriff Williams' and Secretary Leblanc's responsibility to ensure that offenders are not subjected to cruel and unusual punishment or medical neglect. [doc. # 1, pp. 9-10].  He also alleges that Secretary Leblanc is responsible for ensuring that inmates can file grievances and have access to the court system.  *Id.* at 10.  He maintains that he has suffered prolonged pain, suffering, possible permanent injury, and psychological trauma because Williams and Leblanc failed to ensure that RDC was operated with "constitutional integrity and federal mandate."  *Id.*

On August 23, 2022, Plaintiff received hernia surgery.  [doc. #s 24; 26-1].  He heals "more each day."  [doc. # 24, p. 1].

On September 19, 2022, Plaintiff informed the Court that he was transferred to Raymond LaBorde Diagnostic Center.  [doc. # 19].

On October 7, 2022, Plaintiff informed the Court that he was transferred to Dixon Correctional Institute.  [doc. # 24].

On March 1, 2023, Plaintiff was transferred back to RDC.  [doc. # 41, p. 5].

Plaintiff seeks: (1) transfer to Elayn Hunt Correctional Center; (2) medical care; (3) compensation for pain, suffering, mental and psychological damage, and "any permanent damage"; (4) to prosecute defendants; (5) "a federal investigation"; (6) to enjoin Secretary Leblanc to order RDC to follow policy; (7) to enjoin Sheriff Williams to terminate Nurse

Middlebrooks' employment; and (8) punitive damages from Nurse Middlebrooks. [doc. #s 1, p. 12; 41, pp. 11-12].

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[5]  *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is

---

[5] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra.*

In making this determination, the court must assume that all the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Nurse Middlebrooks**

On  March 29, 2022, Dr. Carla Castille examined Plaintiff's injuries, diagnosed him with a "large inguinal hernia soft minimal reducible," and told him that she "was going to refer [him] to Ochsner Surgery Clinic." [doc. #s 1, pp. 5-6; 14, p. 2]. Plaintiff states that Middlebrooks signed Dr. Castille's referral order and wrote, "referred." [doc. # 41, p. 8]. Plaintiff claims, however, that Middlebrooks "intentionally and deliberately failed" to make the referral, which resulted in Plaintiff experiencing, inter alia, "prolonged pain and suffering" and the "progression of an extremely severe medical condition that could have at any time become life threatening . . . ." [doc. #s 41, p. 8; 14, p. 2]. Plaintiff alleges that an "Eceptionist" record reveals that the "only request that [was] made was on Tuesday June 28, 2022 . . . ." [doc. # 14, p. 2].

As of July 11, 2022, Plaintiff's hernia, which was protruding into his scrotum and which hardened, was causing him severe pain in his testicles. *Id.* He claims that Nurse Middlebrooks did not place him on "medical callout" after he submitted "a sick call in the box as instructed by" Dr. Castille. *Id.* On approximately July 12, 2022, he tried to access emergency care, but he was denied. *Id.* He alleges that previously (he suggests approximately one week before July 12, 2022) he asked Lieutenant Wilson for help and that Wilson responded, "I don't mess with Nurse [Middlebrooks] about medical." *Id.* Plaintiff "stopped Capt. Barnes again and asked him for

help," and Barnes responded, "I told you I can't make [Nurse Middlebrooks] do anything for you." *Id.*

The Court should retain Plaintiff's requests for compensatory and punitive damages against Nurse Middlebrooks with respect to two claims. First, Plaintiff plausibly alleges that Nurse Middlebrooks knew he had a serious medical need and—by waiting almost three months (from March 29, 2022-June 28, 2022) to refer him for surgery or otherwise seek approval for his surgery from the D.O.C.—that Middlebrooks was deliberately indifferent to a substantial risk of serious harm. Further, he plausibly alleges that he suffered substantial harm because of the delay in surgery.[6]

Second, Plaintiff plausibly alleges that he requested emergency care on July 11, 2022—as instructed by Dr. Castille—and that Nurse Middlebrooks, who is responsible for "medical callout," did not include him in the "callout" or otherwise provide care.[7]  [doc. # 1, p. 8]. Of import, two other employees at RDC told Plaintiff that they could not force Middlebrooks to help Plaintiff. *Id.*

**3. Transfer**

Plaintiff initially sought a transfer to another facility. A prisoner, however, has no

---

[6] *See, e.g., Fuller v. Harris Cnty.*, 137 F. App'x 677 (5th Cir. 2005) (allegations that county officials delayed a necessary surgical procedure on a prisoner's dislocated knee cap for 19 days, despite a doctor's recommendation that he undergo surgery, that they delayed returning him to the hospital for a scheduled examination following his surgery, and that he developed a serious infection in his leg, which resulted in the amputation of his leg above the knee, stated a claim for deliberate indifference).

[7] *See, e.g., Coleman v. Sweetin*, 745 F.3d 756, 765-66 (5th Cir. 2014) (State prisoner raised possibility of nurse practitioner's deliberate indifference to his serious medical needs, as required for civil rights claim under Eighth Amendment, on prisoner's allegations that he suffered substantial harm as result of nurse practitioner's persistent refusal to answer his "sick-call request slips" or provide pain medication even when he was in so much pain that he was unable to lie down in bed or use the toilet properly).

constitutional right to be housed in any particular facility or transferred from one facility to another, even if conditions and amenities in one may be preferable to another. *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Fuselier v. Mancuso*, 354 F. App'x 49, 2009 WL 3780729, at *1 (5th Cir. Nov. 12, 2009). "The Due Process Clause does not, by itself, endow a prisoner with a protected liberty interest in the location of his confinement." *Yates v. Stalder*, 217 F.3d 332, 334 (5th Cir. 2000); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) ("[T]he State may confine [a prisoner] and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution.").

Moreover, in Louisiana, "any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department. The secretary of the department may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training, and security needs established by the department." LA. REV. STAT. §15:824(A).

Here, as Plaintiff has no federal constitutional right to be transferred to, or confined in, a place of his choosing, and because Plaintiff's placement lies solely in the purview of the D.O.C., the Court should dismiss his request for a transfer.

**4. Request to Investigate and Prosecute Defendants**

Plaintiff asks the Court to investigate and prosecute defendants.

There is no constitutional right to have a person criminally prosecuted. *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990).[8] Investigating and prosecuting possible criminal activities lies

---

[8] *See U.S. v. Batchelder*, 442 U.S. 114, 124 (1979) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion."); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially

in the exclusive jurisdiction of the executive branch of government.  In the federal context, for example, prosecuting criminal actions lies in the discretion of the Attorney General of the United States and duly authorized United States Attorneys.  In Louisiana, prosecuting criminal actions lies in the discretion of the Louisiana Attorney General and the various District Attorneys.  *See* LA. CODE. CRIM. PROC. arts. 61 and 62.

Plaintiff should direct his concerns to a local, state, or federal law enforcement agency. He should be aware that if a prosecuting authority investigates and chooses not to file charges, "[t]he decision to file or not file criminal charges . . . will not give rise to section 1983 liability." *Oliver*, 904 F.2d at 281.  The courts "allow the government discretion to decide which individuals to prosecute, which offenses to charge, and what measure of punishment to seek." *U.S. v. Lawrence*, 179 F.3d 343, 348 (5th Cir. 1999); *see, e.g., Hymel v. Champagne*, 2007 WL 1030207, *2 (E.D. La. 2007) (denying a plaintiff's request to investigate a correctional center: "this Court has no authority to issue such an order and plaintiff has no constitutional right to such an order.  Moreover, to the extent that plaintiff is alleging that a criminal investigation should be instituted, such investigations are solely within the purview of law enforcement authorities.").

The Court should deny this requested relief.

**5. Request for Medical Care**

In his initial pleading, Plaintiff tentatively requested medical care for his injury.[9]  [doc. # 1, p. 12].  As this Court previously found, however, Plaintiff's request is moot: "He was transferred to Raymond Laborde Correctional Center on August 15, 2022, and Mercy Regional Medical Center performed his hernia surgery on August 23, 2022.  The Court finds that this is

---

cognizable interest in the prosecution or nonprosecution of another.").

[9] Specifically, Plaintiff sought a transfer to another facility "with adequate medical facilities immediately to prevent further pain and suffering, injury and medical neglect." *Id.*

ground for dismissal."  [doc. # 28, p. 1].  Accordingly, the Court should dismiss Plaintiff's request.

### 6. Termination of Employment

Plaintiff asks the Court to terminate Nurse Middlebrooks' employment.  [doc. # 14, p. 12].  The Court lacks authority to grant this request.

Federal courts are not prison managers or personnel directors.  *See Hurrey v. Unknown TDCJ Corr. Officer A*, 2009 WL 3645638, at *2 (N.D. Tex. Nov. 4, 2009).  Courts "will not interfere in the administration of prisons absent an abuse of the wide discretion allowed prison officials in maintaining order and discipline."  *Royal v. Clark*, 447 F.2d 501, 501-02 (5th Cir. 1971).  The Supreme Court has continuously cautioned federal courts from assuming "a greater role in decisions affecting prison administration."  *Shaw v. Murphy*, 532 U.S. 223, 230 (2001); *see Turner v. Safley*, 482 U.S. 78, 84-85 (1987); *Smith v. Sullivan*, 611 F.2d 1039, 1044 (5th Cir. 1980).

Moreover, Plaintiff's request sounds in mandamus as he essentially asks the Court to, by writ, compel the non-federal official (or entity) with the authority to terminate defendant's employment to perform his, her, or its duties.  In this respect, the Court lacks jurisdiction.[10]  *See Samuels v. Emanuel*, 2014 WL 50851, at *2 (W.D. La. Jan. 7, 2014) (reasoning, where the plaintiff asked "that the defendants be relieved from their duties[,]" that "federal district court lacks jurisdiction to review actions in the nature of mandamus, seeking to compel state officials to perform duties allegedly owed the plaintiff, as for example in this case . . . .").

---

[10] "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee *of the United States* or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361 (emphasis added).

The Court should deny Plaintiff's requested relief.

**7. Non-Prospective Relief Against Secretary James Leblanc in His Official Capacity**

Liability under 42 U.S.C. § 1983 only applies to "person[s]" who deprive others of rights secured by the Constitution.  "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State."  *Id.*

Secretary Leblanc, in his official capacity, does not qualify as a "person" under Section 1983.  "State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them."  *Hafer v. Melo*, 502 U.S. 21, 27 (1991).  "[T]he real party in interest in an official-capacity suit is the governmental entity and not the named official . . . ."  *Id.*  The State of Louisiana employs Leblanc.

Accordingly, the Court should dismiss Plaintiff's requests for non-prospective relief against Secretary Leblanc in his official capacity.

**8. Prospective Relief Against Secretary James Leblanc**

The only remaining relief Plaintiff seeks with respect to Secretary James Leblanc is (1) "injunctive relief to protect [him] from retaliation" for filing this lawsuit and (2) an order enjoining Leblanc to order RDC to conform to D.O.C.'s policies concerning "staff qualifications, medical access fees, prescription fees, adequate medical care, and facilities."  [doc. # 41, p. 11]. Plaintiff, however, lacks standing to pursue this relief.

"A litigant seeking redress in federal court must show that he has standing to pursue his claims." *Adams v. Pearl River Valley Water Supply Dist.*, 2022 WL 2829756, at *3 (5th Cir. July 20, 2022). "Litigants must also demonstrate standing with respect to the *type* of relief they seek." *Id.*

"To have Article III standing, a plaintiff must show an injury in fact that is fairly traceable to the challenged action of the defendant and likely to be redressed by the plaintiff's requested relief. Courts have divided this rule into three components: injury in fact, causation, and redressability." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) (internal footnotes omitted).

"Requests for injunctive and declaratory relief implicate the intersection of the redressability and injury-in-fact requirements. The redressability requirement limits the relief that a plaintiff may seek to that which is likely to remedy the plaintiff's alleged injuries. Because injunctive and declaratory relief cannot conceivably remedy any past wrong, plaintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury. That continuing or threatened future injury, like all injuries supporting Article III standing, must be an injury in fact. To be an injury in fact, a threatened future injury must be (1) potentially suffered by the plaintiff, not someone else; (2) concrete and particularized, not abstract; and (3) actual or imminent, not conjectural or hypothetical. The purpose of the requirement that the injury be 'imminent' is to ensure that the alleged injury is not too speculative for Article III purposes. For a threatened future injury to satisfy the imminence requirement, there must be at least a 'substantial risk' that the injury will occur." *Id.* (internal footnotes, quotation marks, and quoted sources omitted).

Here, enjoining Leblanc to (1) refrain from retaliating and (2) ensure that RDC conforms to various unidentified D.O.C. policies relating to "staff qualifications, medical access fees, prescription fees, adequate medical care, and facilities" is not likely to remedy or redress any harm or injury which Plaintiff suffered in the past. As above, injunctive relief cannot conceivably remedy any past wrong.

Plaintiff does state that he suffers from post-traumatic stress disorder, anxiety, and depression "due to the abuse and neglect" he allegedly experienced at RDC. [doc. # 41, p. 4]. But "to establish redressability, a plaintiff must show a 'substantial likelihood' that the requested relief will remedy the alleged injury in fact." *Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445, 451 (5th Cir. 2022). Here, Plaintiff does not present a substantial likelihood that his requested relief will redress any continuing harm from past actions. His request to enjoin Leblanc to refrain from retaliating is unrelated to the harm from which he suffers. Likewise, ordering Leblanc to, in turn, order RDC to adhere to various unidentified D.O.C. policies throughout the entire facility will not help Plaintiff recover from psychological harm from past, concluded actions.

Plaintiff does mention that he is concerned for his safety at RDC,[11] but his fear is conjectural or hypothetical and only amounts to *possible* future injury. *See Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) ("[T]he continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury."); *Adams*, 2022 WL at *4 (finding no standing where the plaintiffs "at best offered [a]llegations of *possible* future injury that they have not claimed is

_____

[11] [doc. # 41, p. 5].

imminent, or 'certainly impending,' or anything other than speculative."). In fact, Plaintiff states

that he has not "been mistreated" and that retaliation is only a possibility. [doc. # 41, p. 5].

Simply put, there is no continuing or threatened conduct to enjoin.[12]

At bottom, Plaintiff does not seek any cognizable relief against Leblanc; accordingly, the

Court should dismiss Plaintiff's claims against Leblanc.

**9. Grievance Procedure**

Plaintiff claims that he lacked access to a responsive grievance procedure at RDC. [doc.

# 41, p. 10]. A prisoner, however, does "not have a constitutional right to have his grievances

resolved in his favor or to have his claims reviewed pursuant to a grievance process that is

responsive to his perceived injustices . . . ." *Burgess v. Reddix*, 609 F. App'x 211 (5th Cir.

2015); *see Alexander v. Texas Dep't of Criminal Justice*, 2020 WL 826452, at *2 (5th Cir. Feb.

20, 2020) (affirming dismissal of a claim that grievances were mishandled or improperly denied

because "prisoners have no due process rights in the inmate grievance process.").

In *Sandin v. Conner*, 515 U.S. 472, 475 (1995), the Supreme Court left prisoners without

a federally-protected right to have grievances investigated and resolved. *See Taylor v. Cockrell*,

92 Fed. App'x. 77, 78 (5th Cir. 2004) (holding that "claims that the defendants violated his

constitutional rights by failing to investigate his grievances fall short of establishing a federal

constitutional claim."); *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) ("[The plaintiff]

does not have a federally protected liberty interest in having . . . grievances resolved to his

---

[12] *See Plumley v. Landmark Chevrolet, Inc*., 122 F.3d 308 (5th Cir. 1997) (plaintiff lacked standing to seek injunctive relief because there was no threat of present or future harm); *Society of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992) (denying injunctive relief when plaintiff could not show that she suffered any continuing harm or that there was a real or immediate threat of recurring harm); *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985) (speculative future injury alone is not enough to warrant injunctive relief).

satisfaction. . . . [A]ny alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless."). Here, accordingly, the Court should dismiss Plaintiff's claim.

**10. Sheriff Williams**

In his initial pleading, Plaintiff alleges the following: "as Sheriff of Eash Carrol Parish, which operates and owns [RDC], it is Wydette Williams' obligation and responsibility to ensure no offender housed at [RDC] is subjected to cruel and unusual punishment or medical neglect in accordance with federal law and that his facility is in compliance with Dept. of Corrections policy and ran with constitutional integrity. [sic]." [doc. # 1, p. 10].

In an amended pleading, Plaintiff alleges generally that Sheriff Williams is responsible for ensuring that inmates at RDC receive adequate medical care, access to the courts, and access to the grievance process. [doc. # 41, p. 9]. He mentions that Williams employed Nurse Middlebrooks "despite numerous allegations including compelling evidence of medical neglect[.]" *Id.* He then claims generally that Williams "has known of and failed to correct and implement policies to ensure [RDC] is operating within constitutional integrity." *Id.*

"Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994). "'[A] plaintiff must show either [that] the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation.'" *Brown v.*

*Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (*quoting Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003)).

Here Plaintiff does not plausibly allege that Sheriff Williams affirmatively participated in any of the above acts or omissions or that there was a sufficient causal connection between Williams's conduct and any alleged constitutional violation.[13]  Instead, Plaintiff essentially pleads only vicarious liability, blaming Williams for the alleged actions or omissions of Nurse Middlebrooks.  *See Thompkins v. Belt*, 828 F.2d 298, 305 (5th Cir. 1987) ("[M]isconduct of Sheriff Belt's employees cannot be imputed to the sheriff individually . . . ."); *Sanchez v. Moore*, 2021 WL 5913305, at *1 (5th Cir. Dec. 14, 2021) ("His conclusory assertions that Sifuentes was liable in his role as a supervisor because he did not get involved with the law library policies or the issuance of a medical pass do not establish an affirmative participation in the denial of his rights or the implementation of unconstitutional policies by Sifuentes.").

Plaintiff tentatively claims that Williams failed to implement policy.  For claims of failure to promulgate policy or failure to train, a "plaintiff ordinarily must show [a] pattern of similar constitutional violations, because without notice of prior constitutional violations, a supervisor can hardly be said to have acted deliberately indifferent."  *Grant v. LeBlanc*, 2022 WL 301546, at *5 (5th Cir. Feb. 1, 2022).  The pattern requires "similarity and specificity; '[p]rior indications cannot simply be for any and all bad or unwise acts, but rather must point to

---

[13] *See Dedrick v. Richards*, 47 F.3d 425 (5th Cir. 1995) ("An official who is sued in her individual capacity cannot be liable under § 1983 on the theory of *respondeat superior;* to be liable she must have been personally involved in the plaintiff's injury."); *Salcido v. Univ. of S. Mississippi*, 557 F. App'x 289, 292 (5th Cir. 2014) ("To make out a § 1983 claim against the Defendants in their individual capacities, Salcido must show that they were either personally involved in the constitutional violations alleged or that their wrongful actions were causally connected to the constitutional deprivation.").

the specific violation in question.'" *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th

Cir. 2009) (*quoting Estate of Davis ex rel. McCully v. City of North Richland Hills,* 406 F.3d

375, 383 (5th Cir. 2005)).  "A pattern also requires 'sufficiently numerous prior incidents,' as

opposed to 'isolated instances.'" *Id.* (*quoting McConney v. City of Houston,* 863 F.2d 1180,

1184 (5th Cir. 1989)).  For conduct to be sufficiently widespread, it must have "occurred for so

long and with such frequency that the course of conduct demonstrates the governing body's

knowledge and acceptance of the disputed conduct." *Webster v. City of Houston*, 735 F.2d 838,

842 (5th Cir. 1984), *on reh'g,* 739 F.2d 993 (5th Cir. 1984).

Here, Plaintiff makes no attempt to allege a specific pattern of similar actions or

omissions.[14]  Rather, he alleges only lapses or delays in *his* medical care.  *See Ratliff v. Aransas

Cty., Texas*, 948 F.3d 281, 285 (5th Cir. 2020) (finding no custom where "the complaint's only

specific facts appear in the section laying out the events that gave rise to this action."); *Brown v.

Tarrant Cnty., Texas*, 985 F.3d 489, 498 (5th Cir. 2021) ("Brown identified only one instance of

the county's confining a committee without treatment—his own—but [i]solated violations are

not the persistent, often repeated, constant violations, that constitute custom and policy as

required for municipal section 1983 liability.") *Clyce v. Hunt Cty., Tex.*, 515 F. App'x 319, 325

(5th Cir. 2013) (county did not have a policy or custom of delaying medical care, where the

plaintiffs offered evidence relating only to the detainee); *Cardenas v. Lee Cty., Tex.*, 569 F.

App'x 252, 256 (5th Cir. 2014) ("That [two prisoners] received [medical care] either too early or

too late may indicate, as the district court suggested, a failure in judgment by the prison officials.

---

[14] At best, Plaintiff vaguely alleges that "Williams has been named in in numerous civil actions concerning medical neglect [and] 8th Amendment violations as well as allegations surrounding grievance procedures at [RDC]."

These two isolated failures in judgment cannot, however, establish a custom or policy of denying medical care to inmates.").[15]

Plaintiff also does not allege that Williams implemented an explicit policy that deprived him of constitutionally adequate medical care. *See Alderson*, 848 F.3d at 421. Accordingly, the Court should dismiss the claims above against Williams.

### Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Landon Cain Owens's claims against Secretary James Leblanc, claims against Sheriff Wydette Williams, and requests for transfer, medical care, prosecution and investigation of defendants, and other injunctive relief be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the**

---

[15] *See also Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838 (5th Cir. 2009) (twenty-seven complaints of excessive force against city police officers over a four-year period did not suggest a pattern so common and well-settled as to constitute a custom that fairly represented an official policy); *Clark v. Thompson*, 850 F. App'x 203, 207 (5th Cir. 2021) ("'I was treated unprofessionally' plus 'eighty-two generic complaints' does not equal facts that plausibly show a single comparable incident that would support an inference of a specific custom of violating constitutional rights.").

legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, this 20th day of April, 2023.


Kayla Dye McClusky
United States Magistrate Judge